IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | |
| | § | CRIMINAL NO. 15-CR-344 |
| JEFFREY EUGENE ROSE, Sr., | § | |
| PAMELA ANNETTE ROSE, | § | |
| FRANKIE LEE SANDERS, | § | |
| HUGO GERARDO JAIME, D.C. | § | |

## MOTION FOR JUDGMENT OF ACQUITTAL

Comes now, Defendant Jeffrey Rose ("Mr. Rose"), and moves for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 as to all counts and in support thereof would respectfully show the Court as follows:

The Government has wholly failed to present any credible evidence of the *mens rea* required for each count in the Indictment – specific intent to defraud the Department of Labor. Further, the Government's proof is insufficient to survive Rule 29 review.

## LEGAL STANDARD

"A motion for a judgment of acquittal challenges the sufficiency of the evidence to convict."[1] On motion of a defendant, the court shall order the entry of judgment of acquittal of offenses charged in the indictment after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offenses.[2] "The test for the

---

[1] *United States v. Therm-All, Inc.*, 373 F.3d 625, 630 (5th Cir. 2004).
[2] Fed. R. Crim. P. 29(a).

sufficiency of the evidence is whether, in the light most favorable to the government, ***a reasonable man might find the evidence inconsistent with every reasonable hypothesis of innocence.***"[3]

In *Jackson v. Virginia,* the Supreme Court recognized that the standard for judging motions for acquittal in federal criminal trials is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."[4] While the court must consider the evidence in the light most favorable to the government, it must grant a judgment of acquittal if the evidence provides "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged."[5] Additionally, as noted by the Fifth Circuit in *United States v. Menesses,* "juries must not be allowed to convict on mere suspicion and innuendo."[6]

## CONSPIRACY

A judgment of acquittal should be granted on the conspiracy count. Conspiracy exists where two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy.[7]

---

[3] *United States v. Navar*, 611 F.2d 1156, 1158-59 (5th Cir. 1980) (citing *United States v. Wilkinson*, 601 F.2d 791 (5th Cir. 1979)) (emphasis added).
[4] 443 U.S. 307, 318 (1979).
[5] *See United States v. Hernandez-Bautista*, 293 F.3d 845, 853 (5th Cir. 2002) (affirming grant of judgment of acquittal).
[6] 962 F.2d 420, 427 (5th Cir. 1992).
[7] *See* 18 U.S.C. § 371.

**The Government Has Produced No Evidence of Mr. Rose's Participation in the Alleged Conspiracy.**

Count One of the Indictment alleges that all four defendants "did knowing[ly] and willfully conspire with each other" to commit health care fraud and that the "object of the conspiracy was to receive payments from health care benefit programs, including FECA, for health care services, including physical therapy, that were not provided as billed."[8]

For a jury to convict a defendant of conspiracy to commit these crimes, the Government must prove beyond a reasonable doubt that: (1) the defendant and at least one other person made an agreement to commit the crime(s) . . . ; (2) the defendant "knew the unlawful purpose of the agreement and joined in it willfully, that is, with the *intent* to further the unlawful purpose;" and (3) one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment in order to accomplish the purpose of the conspiracy.[9] The Government must prove agreement on one of the objectives charged in the indictment and "that each defendant knowingly participated in a scheme to achieve this particular goal."[10]

Simply stated, the Government has introduced not one shred of evidence showing Mr. Rose agreed with any person to commit any crime, that he knew of any unlawful purpose, that he willingly joined in any agreement to commit a crime or that he had the

---

[8] Second Superseding Indictment (Doc. 172 ), p. 5 (emphasis added).
[9] *See United States v. Moss*, Criminal Action No. 09-123, 2011 WL 2118940 at *4 (E.D. La. May 24, 2011) (citing *United States v. Hernandez-Vera*, No. 09-40821, 2010 WL 5299886 (5th Cir. Dec. 23, 2010)).
[10] *Moss*, 2011 WL 2118940 at *4 (quoting *United States v. Berger*, 224 F.3d 107, 113 (2d Cir. 2000)).

intent to further any unlawful purpose in a conspiracy with the other defendants in this case.

## HEALTH CARE FRAUD

Health Care Fraud requires *specific intent* to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises by use of the Postal Service or another private or commercial interstate carrier.[11]

**The Government Failed to Introduce Any Evidence of Health Care Fraud.**

The Indictment alleges that Defendants:

"…did *knowingly and willfully*, execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely FECA, and to obtain money owned by and under the custody and control of FECA, *by means of false and fraudulent pretenses, representations, and promises*, in connection with the delivery of and payment for health care benefits, items, and services."[12]

The Government has failed to prove that Mr. Rose engaged in health care fraud. To the contrary, the Government's own witness, John Cruise, testified that Mr. Rose never committed any health care fraud offense and never directed any other person to commit any health care fraud offense. The evidence backs up Mr. Cruise's testimony, and has shown that Mr. Rose is one of four principals and employees of independent but related companies (hereinafter the "Target Companies") whose business was to provide therapeutic and rehabilitative care to federal employees who had been injured while at

---

[11] *See* 18 U.S.C. § 1341 (emphasis added).
[12] Second Superseding Indictment (Doc. 172) at p. 8 (emphasis added).

work. Payment for these services was obtained by submitting their billings through the procedures outlined in the Federal Employees Compensation Act (hereinafter "FECA"). The Target Companies oversaw the filing of claims, the treatment of patients, billing and appeals for denial of coverage, if necessary.

In accordance with federal and state regulations, each patient was evaluated by a qualified physician who issued a treatment plan that was then approved by the proper federal oversight agency.[13] The patient was then properly referred by the physician to a chiropractic doctor who then prescribed physical therapy, a discipline listed as "qualified personnel" under all relevant provisions,[14] and an authorized delegation of treatment under applicable federal and state law even if the prescribed plan calls for "physical therapy"[15]. To the extent the application of treatment was performed or supervised by any other person,

---

[13] *See 20 C.F.R. 10.310(a):* The employee is entitled to receive all medical services, appliances or supplies which a qualified physician prescribes or recommends and which OWCP considers necessary to treat the work-related injury.

[14] "Physician" includes surgeons, podiatrists, dentists, clinical psychologists, optometrists, chiropractors, and osteopathic practitioners within the scope of their practice as defined by State law. The term "physician" includes chiropractors only to the extent that their reimbursable services are limited to treatment consisting of manual manipulation of the spine to correct a subluxation[14] as demonstrated by X-ray to exist, and subject to regulation by the Secretary;

[15] *See 20 C.F.R. 10.311(d):* A chiropractor may also provide services in the nature of physical therapy under the direction of, and as prescribed by, a qualified physician. *See 20 C.F.R. 10.310(b):* Any qualified physician or qualified hospital may provide such services, appliances and supplies. Non-physician providers such as physicians' assistants, nurse practitioners and physical therapists may also provide authorized services for injured employees *to the extent allowed by applicable Federal and State law.* (*emphasis added*); See also *Texas Administrative Code title 22 Part 3 Chapter 78 Rule 78.13* for a lengthy description of the areas of permissible practice of a properly licensed chiropractor.

5

that delegation of authority was overseen by a person authorized to do so under applicable state law.[16]

The health care fraud count should be dismissed as the Government has failed to introduce evidence sufficient to reasonably support a finding of guilt beyond a reasonable doubt, as required by *Jackson*.[17]

## WIRE FRAUD COUNTS

Wire fraud requires *specific intent* to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises and transmission of any writings, signs, signals, pictures, or sounds by means of wire communication in interstate commerce for the purpose of executing such scheme.[18]

**The Government Failed to Introduce Evidence of Wire Fraud.**

There is insufficient evidence on the elements of the wire fraud counts. The Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each.[19] To prove wire fraud the government must show (1) scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in the scheme with intent to defraud, and (3) use of

---

[16] *See Texas Administrative Code Title 22 Part 3 Chapter 77 Rule 77.5* for a lengthy description of the qualified personnel to whom properly licensed chiropractors may assign certain therapeutic and rehabilitative duties.
[17] 443 U.S. at 318.
[18] *See* 18 U.S.C. § 1343.
[19] *See Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S. Ct. 316, 98 L. Ed. 2d 275 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis…."); *see also United States v. Brumley*, 59 F.3d 517, 520 n. 4 (5th Cir. 1995).

interstate wire communications in furtherance of the scheme.[20] "The underlying question is whether the [use of the wire] somehow contributed to the successful continuation of the scheme—and, if so, *whether [it was] so intended* by the defendant."[21]

**Acquittal Should Be Granted on Wire Fraud Counts as the Wires Did Not Further the Scheme and Were Not for the "Purpose of Executing" the Scheme.**

The undisputed evidence is the six wires sent between April of 2012 and April of 2013, were payments sent to Federal Work Ready by the Department of Labor for properly rendered patient services. As stated above, the Government has failed to prove that these services were not properly provided or were not provided as billed. Further, the Government has only even attempted to prove that a small token amount of these services were not provided as billed and has offered no evidence at all regarding the majority of the patients whose treatment those wires cover. Specifically, the wires themselves were sent by the Department of Labor and not by anyone at the Target Company. The wires were sent for the treatment of a very large number of patients and cases that were neither alleged as part of any wrong doing, introduced into evidence in any manner by the Government, or proven to be fraudulent by the Government. In fact, the Government only alleges about four thousand dollars in alleged fraudulent billing as related to eight patients in their indictment.

Sending money to pay for work that was properly performed is not wire fraud. Acquittal is appropriate. The use of the wire to make payments in this case does not meet

---

[20] *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 193 (1995).
[21] *United States v. Barraza*, 655 F.3d 375, 383 (5th Cir. 2011)(emphasis added)(citations omitted).

the *Barraza* standard, as it did not contribute to any successful continuation of any scheme—and it was not specifically intended to do so by the Defendant. There is no evidence these wires furthered any fraud and no reasonable juror could conclude the wires were for the "purpose of executing" fraud.

## MONEY LAUNDERING COUNT

Money Laundering requires that Defendants acted with *specific intent* to *knowingly* conduct and attempt to conduct financial transactions affecting interstate and foreign commerce with the proceeds of specified *unlawful activity*, that is health care fraud while *knowing* that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity and that while conducting and attempting to conduct such financial transactions, the Defendants *knew* that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

**The Government Failed to Introduce Any Evidence of Money Laundering.**

The Indictment alleges that Defendants acted:

"To knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce with the proceeds of specified unlawful activity, that is health care fraud in violation of Title 18, United States Code, Section 1347, and wire fraud in violation of Title 18 United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i), and

To knowingly engage and attempt to engage, in monetary transactions within the United States, by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property

having been derived from a specified unlawful activity, that is health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1957."[22]

To satisfy the intent requirement, "the government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified unlawful activity."[23] "It is not enough to show that a money launderer's actions *resulted* in promoting the carrying on of specified unlawful activity."[24] Instead, "the evidence must show that the defendant's conduct not only promoted a specified unlawful activity but that he engaged in it *with the intent* to further the progress of that activity."[25] The Fifth Circuit has repeatedly stressed the importance of not turning the "money laundering statute into a 'money spending statute." [26]

Strictly adhering to the *specific intent* requirement of the promotion element of § 1956(a)(1)(A)(i) helps ensure that the money laundering statute will punish conduct that is really distinct from the underlying specified unlawful activity and will not simply provide overzealous prosecutors with a means of imposing additional criminal liability any time a defendant makes benign expenditures with funds derived from unlawful acts.[27] Further, to prove a crime under the separate statute of 18 U.S.C. § 1957(a), of engaging in a monetary transaction in criminally derived property that is of a value greater than $10,000

---

[22] Second Superseding Indictment at p. 11-12 (emphasis added).
[23] *United States v. Stanford*, 823 F.3d 814, 849 (5th Cir. 2016) (citing *United States v. Trejo,* 610 F.3d 308, 314 (5th Cir.2010; *United States v. Brown,* 186 F.3d 661, 670 (5th Cir.1999)).
[24] *Id*.
[25] *Id.*
[26] *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999); *See United States v. Leonard,* 61 F.3d 1181, 1185 n. 2 (quoting *United States v. Sanders,* 928 F.2d 940, 946 (10th Cir.1991)).
[27] *Id.*

the Government must prove that the Defendant's did so *with knowledge* of the unlawful source.[28]

The Government's proof fails to establish any charged underlying crime or that the Defendants *knowingly* conducted or attempted to conduct financial transactions with the any amount of proceeds of health care fraud while *knowing* that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the healthcare fraud, and that while conducting and attempting to conduct such financial transactions, the Defendants *knew* that the property involved in the financial transactions represented the proceeds of healthcare fraud. Therefore, the Court should instruct a judgment of acquittal as to the money laundering count.

## CONCLUSION

Based upon the foregoing, Mr. Rose requests that the Court enter an order granting a judgment of acquittal regarding all counts of the Indictment in this case and all other relief to which he is justly entitled.

Respectfully Submitted,

/s/Chip Lewis
Chip Lewis
Federal ID No. 24313
1207 S. Shepherd
Houston, TX 77019
Telephone: 713 523-7878
Facsimile: 713 523-7887

---

[28] *Id* (emphasis added).

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2016, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/Chip Lewis*
Chip Lewis
